**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kris Semelsberger,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of the Social Security Administration,<br><br>    Defendant. | No. CV-11-263-PHX-LOA<br><br>**ORDER** |

Plaintiff seeks judicial review of the Commissioner of Social Security's denial of her application for disability insurance benefits. 42 U.S.C. § 405(g). The parties, who have consented to proceed before the United States Magistrate Judge, have filed briefs in accordance with Local Rule of Civil Procedure 16.1. (Docs. 8, 11) After review of the record, briefing, and the applicable law, the decision of the Commissioner is affirmed.

**I. Procedural Background**

On September 26, 2007, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability with an onset date of April 15, 2006. (Tr. 94-110[1]) The claim was denied initially and upon reconsideration. (Tr. 36-39, 42-49, 50-58) Plaintiff requested a hearing before an administrative law judge ("ALJ"). Before the hearing, which was held on May 4, 2010, Plaintiff amended the disability onset date to August 5, 2006. (Tr. 17-35, 179) After conducting a hearing, the ALJ issued a decision on June 22, 2010, finding Plaintiff was not

---

[1] Citations to "Tr." are to the administrative transcript which appears at docket 14.

1  disabled under the Social Security Act. (Tr. 10-16) This decision became the final decision
2  of the Commissioner of Social Security when the Social Security Appeals Council denied
3  Plaintiff's request for review. (Tr. 1-4) Plaintiff now seeks judicial review of this decision,
4  pursuant to 42 U.S.C. § 405(g).

## II.  Applicable Legal Standards

### A.  Sequential Evaluation Process

A "disability" is defined by the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). An individual is disabled if "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A). The claimant bears the initial burden of proving disability. 42 U.S.C. § 423 (d)(5); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). If the claimant shows he is unable to perform past relevant work, the burden shifts to the Commissioner to demonstrate that the claimant "can perform other substantial gainful work that exists in the national economy." *Takcett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

An ALJ determines an applicant's eligibility for disability insurance benefits by following the five steps listed below:

(1)  determine whether the applicant is engaged in "substantial gainful activity";

(2)  determine whether the applicant has a "medically severe impairment or combination of impairments";

(3)  determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4)  if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant has the residual functional capacity to perform his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work in the national economy in view of his [or her] age, education, and work experience."

*Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)). At the fifth step, the burden of proof shifts to the Commissioner. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098).

Applying the five-step analysis, the ALJ found that: (1) Plaintiff has not engaged in substantial gainful activity since April 15, 2006; (2) Plaintiff has the following severe impairments: hepatitis C; cirrhosis of the liver; and a history of a left humerus fracture; and (3) Plaintiff's impairments do not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12) The ALJ further found that Plaintiff retains the residual functional capacity to perform her past relevant work as a waitress. (Tr. 13, 16) Thus, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (Tr. 16)

**B. Standard of Review**

A district court must affirm the Commissioner's findings if they are supported by substantial evidence and are free from legal error. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (*per curiam*); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). In determining whether substantial evidence supports a decision, the court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Sandgathe,* 108 F.3d at 980 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)).

The ALJ is responsible for resolving conflicts, determining credibility, and resolving ambiguities. *Andrews*, 53 F.3d 1035 at 1039; *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If sufficient evidence supports the ALJ's determination, the court cannot substitute its own determination. *Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990). Moreover, if a reasonable mind could understand the evidence to support either outcome, the court must defer

to the ALJ's decision. *Richardson v. Sullivan*, 981 F.2d 1016 (9th Cir. 1992) (citations omitted). If on the record as a whole, substantial evidence supports the ALJ's decision and it is free from legal error, the court must affirm it. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C.A. § 405(g). Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that "the ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir.2006)).

**III. Facts**

    **A. Plaintiff's Background**

Plaintiff was born in 1965 and was 45 years old at the time of the administrative hearing. (Tr. 16, 101) She has a high school education. (Tr. 123) She primarily worked as a waitress. (Tr. 118)

    **B. Medical Record**

On August 4, 2006, Plaintiff fell off a chair and fractured her left arm. (Tr. 184,191, 204) Plaintiff was treated by William A. Salyer, M.D., who performed surgery on August 15, 2006 which included the placement of surgical hardware. (Tr. 191-92) During an August 28, 2006 follow-up appointment, Dr. Salyer noted that Plaintiff was "remarkably comfortable" and did "not have much pain." (Tr. 203) Plaintiff "no showed" for a follow-up appointments scheduled for September 19 and 28, 2006. (Tr. 203) During an October 16, 2006 appointment, Plaintiff admitted that she had "been overdoing it." (Tr. 202) She reported "doing fine" during the day, but experiencing "some pain in her shoulder" at night. (*Id.*) Dr. Salyer noted that, although Plaintiff had initially declined physical therapy, he was going to get her started on physical therapy. (*Id.*)

In January of 2008, Plaintiff saw Dr. Salyer complaining of pain near the surgical site. (Tr. 199) Dr. Salyer ordered x-rays which indicated that most of Plaintiff's pain was "due to prominent hardware." (*Id.*) Plaintiff did "not want to consider further surgery at [that] time to remove the plate which might be necessary in the future." (*Id.*) Dr. Salyer gave Plaintiff

injections for the pain and suggested she reduce her activity for a few weeks. (*Id.*) There is no evidence indicating that Plaintiff received further care for this condition.

Plaintiff also has a history of Hepatitis C and B for which she was initially seen by Roberto Alvarez, M.D., on May 20, 2005. (Tr. 222) Dr. Alvarez noted Plaintiff's history of crack cocaine use, and smoking about a pack of cigarettes a day. (*Id.*) Plaintiff was advised to abstain from drinking any alcoholic beverages and to return in eight weeks. (*Id.*) Dr. Alvarez did not see Plaintiff again until January 16, 2008. Dr. Alvarez noted that Plaintiff was incarcerated for part 2005 and 2006. (Tr. 212) Plaintiff reported drinking "an occasional beer" and "smoking about half a pack of cigarettes per day." (*Id.*) A biopsy confirmed cirrhosis in February of 2008. (Tr. 207, 208) Testing also revealed elevated liver enzymes, viral quantity, and AFP.[2] (Tr. 210, 336) Plaintiff opted not to pursue treatment for Hepatitis C. (Doc. 15 at 3)

Plaintiff also has chronic obstructive pulmonary disease ("COPD"). In January of 2008, respiratory testing found an FEV1[3] of 1.26 and a FVC[4] of 3.05. (Tr. 299) The test results state Plaintiff's "FEV1 is 41% predicted. Your lung age is 100." (*Id.*) In November of 2008, testing found a FEV1 of 1.29 and a FVC of 2.91. (Tr. 360) The test results state "your FEV1 is 42% predicted. Your lung age is 88." (*Id.*)

---

[2] AFP, or alpha-fetoprotein, is a test to "help diagnose and monitor therapy for certain cancers of the liver, testes, or ovaries." Additionally, the AFP test is given "at intervals during and after treatment for one of these cancers; sometimes when [a patient has] chronic hepatitis or cirrhosis." www.labtestsonline.org (last visited on January 27, 2012).

[3] FEV1 is the "Forced Expiratory Volume in the first second. The volume of air that can be forced out in one second after taking a deep breath, an important measure of pulmonary function." www.medterms.com (last visited on January 26, 2012).

[4] FVC means "Forced Vital Capacity" which is "measured with the subject exhaling as rapidly as possible; . . . ." www.medilexicon.com (last visited on January 27, 2012).

The medical record also includes an assessment from Velda Rose Medical Center on September 17, 2007, January 3, 2008 and August 4, 2008, stating that Plaintiff has rheumatoid arthritis. (Tr. 287, 290, 293) There is also evidence of Plaintiff's depression. (Tr. 255-85)

On April 16, 2008, Robert S. Hirsch, M.D., a state agency physician, reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment. (Tr. 223-230) Dr. Hirsch opined that Plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk/sit about 6 hours in an 8-hour work day; had no limitations on pushing or pulling; could frequently climb, stoop, kneel, crouch, and crawl; could occasionally balance; was limited to lifting above her shoulder level to "2/3 of the time"; had no limitations on handling, fingering, or feeling; had no visual, communication, or environmental limitations. (Tr. 224-230)

On May 5, 2008, James E. Huddleston, Ph.D., a state agency psychologist, conducted a psychiatric consultation and mental status examination of Plaintiff. (Tr. 231-36) Dr. Huddleston opined that Plaintiff's "prognosis for a successful return to the work force is estimated as good. No functional limitations were identified that might be attributed to psychological conditions or factors." (*Id*. at 236)

**IV. Hearing Testimony**

Plaintiff and vocational expert, George Bluth, testified at the administrative hearing. (Tr. 18) Plaintiff testified that she was unable to work due to a respiratory problems, hepatitis C and B, cirrhosis of the liver, and rheumatoid arthritis. (Tr. 21) Plaintiff testified that she stopped smoking about three years before the administrative hearing. (Tr. 33-34) She stated that she does not take any medication for her respiratory problem. (Tr. 26) Plaintiff testified that she has a seven-inch steel plate in her left arm from surgery for a broken arm in 2006. (Tr. 21) She has arthritic pain in her shoulders and hands. (Tr. 21, 23-24) She testified that she is depressed and has memory problems. (Tr. 22-23)

Because Plaintiff feels tired all the time, she takes naps daily. (Tr. 24-25) Plaintiff testified that she had no difficulty sitting, but could only stand for ten minutes at a time, could lift no more than ten pounds, and has trouble gripping items with her hands. (Tr. 28) Plaintiff

testified that she did laundry, and shopped once a month. (Tr. 30) Plaintiff's 16-year-old daughter lived with her and helped with housecleaning. (Tr. 29-32)

The vocational expert testified that, if the ALJ found Plaintiff's testimony credible about fatigue and laying down most of the day, such an individual could not perform work on a sustained basis. (Tr. 34-35)

**V. The ALJ's Decision**

The ALJ denied Plaintiff's application for disability benefits after applying the sequential evaluation process, 20 C.F.R. § 404.1520(a)(4). (Tr. 12)  At the first step, the ALJ found that Plaintiff had not performed any substantial gainful activity since the disability onset date, August 5, 2006. (Tr. 12)  At the second step, the ALJ found Plaintiff had the following severe impairments: hepatitis C, cirrhosis of the liver, and a history of a humerus fracture. (Tr. 12) The ALJ found the severity of Plaintiff's impairments did not meet or equal the criteria of any impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (*Id.*)  The ALJ found Plaintiff had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b). (Tr. 13) The ALJ determined that Plaintiff could perform her past work as a waitress. (Tr. 16)  Thus, the ALJ found that Plaintiff was not disabled under the Social Security Act. (Tr. 16)

In reaching this conclusion, the ALJ found Plaintiff's symptom testimony less than credible because her reported limitations were unsupported by her activities and the medical evidence. (Tr. 15)

**VI. Analysis**

In support of her request for review of her claim for disability benefits, Plaintiff presents three claims.

    1. The ALJ erred by failing to review the medical records in their entirety;

    2. The ALJ erred by failing to cite all of Plaintiff's severe impairments;

    3. The ALJ erred by rejecting Plaintiff's symptom testimony.

(Doc. 15 at 2)  Defendant opposes Plaintiff's assertions. The Court will address Plaintiff's claims below.

### A. Failure to Review Medical Records

Plaintiff contends that the ALJ failed to review all of the medical evidence. (Doc. 15 at 4-5) Specifically, Plaintiff asserts that she has been treated for severe COPD since 2008 and that respiratory testing produced findings of an FEV1 of 1/26 in January 2008 and 1/29 in November of 2008. (*Id.* at 4; Tr. 299, 360) Plaintiff argues that at her height, 65 inches, the "listing" level of severity for meeting Social Security criterion for disability is FEV1 of 1/25 or less. (Doc. 15 at 4) Plaintiff notes that the ALJ apparently failed to consider the medical records pertaining to her COPD, because her respiratory deficit was relevant to her residual functional capacity. (*Id.*) Plaintiff further argues that the ALJ erred in failing to discuss Plaintiff's diagnosis of rheumatoid arthritis. (Tr. 287) She contends that because "rheumatoid arthritis is a severe impairment and would cause impairments affecting the ability to sustain employment, the ALJ should have discussed the impact of these issues in his decision." (Doc. 15 at 5)

In making a disability determination, the ALJ must develop the record and interpret the medical evidence. *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996). In doing so, the ALJ must consider the "combined effect" of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 416.923. However, in interpreting the evidence and developing the record, the ALJ need not "discuss every piece of evidence." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *see also Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Here, the ALJ specifically stated that he "careful[ly] consider[ed] all the evidence . . . ." (Tr. 10) The Court finds no reason to doubt the ALJ's statement. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (stating that the court generally takes "a lower tribunal at its word when it declares it has considered a matter.").

Plaintiff contends that the ALJ erred in failing to consider evidence concerning COPD and rheumatoid arthritis. Plaintiff is correct that the ALJ's decision does not explicitly discuss the January and November 2008 pulmonary function testing or the reference to COPD in the medical record. (Tr. 10-16, 299, 360, 386) Even assuming the ALJ erred in failing to discuss

this evidence, Plaintiff bears the burden of "showing that an error is harmful." *Shinseki v. Sanders*, 556 U.S. 396 (2009) (noting that the burden of showing that an error is harmful normally falls on the party attacking the agency's determination.) (citing, *inter alia*, *Nelson v. Apfel*, 131 F.3d 1228, 1236 (9th Cir. 1997)). Plaintiff has not shown that the ALJ's failure to specifically discuss his consideration of the COPD evidence had a substantial influence on the outcome of the disability determination.

The medical record did not include evidence of ongoing treatment for Plaintiff's respiratory problems. During the 2010 administrative hearing, Plaintiff stated that she was not taking any medication for respiratory issues. (Tr. 26) Plaintiff's testimony that she quit smoking three years before the hearing, or in 2007, was inconsistent with the medical record which indicates that she was a smoker when the January and May 2008 pulmonary function tests were performed. (Tr. 33-34, 299, 360) In view of the paucity of medical evidence regarding Plaintiff's respiratory issues, the ALJ's failure to specifically discuss that evidence was harmless.

Plaintiff also argues that the ALJ erred in failing to discuss the medical records concerning her rheumatoid arthritis. Contrary to Plaintiff's assertion, the ALJ specifically discussed the medical records concerning Plaintiff's arthritis. (Tr. 15) The ALJ noted that "[a]lthough the claimant testified that she has arthritis in her shoulders and hands, there is no x-ray or other evidence which confirms this. Nor are there any progress notes showing treatment for arthritis. Although there was a brief mention in the treating evidence of rheumatoid arthritis, there are no laboratory findings or other medical findings which confirm this diagnosis." (*Id.*) The ALJ considered the evidence in the record regarding rheumatoid arthritis and Plaintiff has not met her burden of establishing any error pertaining to such evidence.

### B. Severe Impairments

Plaintiff further argues that the ALJ erred in failing to cite all of Plaintiff's severe impairments. (Tr. 5-6) A claimant bears the burden of proving that she has a medically determinable "severe" impairment. *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). A severe impairment must be properly diagnosed by an acceptable medical source.

*Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).

Similar to her first ground for relief, Plaintiff claims that the ALJ erred by failing to consider her COPD and rheumatoid arthritis. She takes issue with the ALJ's failure to "add" the rheumatoid arthritis diagnosis and COPD "to the severe impairment list." (*Id.* at 6) "An 'impairment' must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical laboratory diagnostic techniques." 20 C.F.R. §§ 404.1582(a), 416.928(a). As previously discussed, the ALJ specifically found that the objective medical evidence did not confirm Plaintiff's rheumatoid arthritis. (Tr. 15) The ALJ stated that, "[a]lthough there was a brief mention in the treating evidence of rheumatoid arthritis, there are no laboratory findings or other medical findings which confirm this diagnosis." (*Id.*)

Additionally, the medical record included only two isolated pulmonary function tests in 2008 and no ongoing treatment for COPD. Plaintiff admitted during the administrative hearing that she was not receiving any treatment for her respiratory issues. Plaintiff, therefore, did not satisfy her burden of establishing that COPD or rheumatoid arthritis was a severe impairment. *Edlund*, 253 F.3d at 1160. Likewise, she has not established that the ALJ erred in failing to consider Plaintiff's COPD and rheumatoid arthritis severe impairments.

**C. Plaintiff's Symptom Testimony**

Finally, Plaintiff argues that the ALJ erred in discounting her symptom testimony. (Doc. 15 at 6-7) As discussed below, the ALJ did not err in this regard.

In deciding whether to accept a claimant's subjective symptom testimony regarding the severity of a claimant's symptoms, a district court must determine whether the claimant has produced objective medical evidence of the impairments at issue. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160-61 (9th Cir. 2008). Next, the claimant must show that her medically determinable impairments could reasonably be expected to produce some degree of symptoms of which the claimant complained. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Here, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause many of the alleged symptoms; however, the claimant's

statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 15) Because the ALJ found no evidence of malingering, he was permitted to disregard Plaintiff's testimony about the symptoms' severity by offering specific, clear, and convincing reasons for doing so. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

To determine whether a claimant's testimony regarding the severity of her symptoms is credible, an ALJ may consider the following: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. An ALJ may also consider the claimant's work record, and the observations of treating and examining physicians and other third parties regarding "the nature, onset, duration and frequency of claimant's symptoms, and precipitating and aggravating factors, functional restrictions caused by the symptoms, and the claimant's daily activities." *Id.*

Here, the ALJ noted that Plaintiff testified that she experienced pain in her hands and shoulders due to arthritis. However, as the ALJ noted, the medical record did not include an x-ray or other diagnostic evidence confirming that allegation. Additionally, there were no progress notes regarding any treatment for arthritis. The ALJ noted that Plaintiff's complaint of fatigue was consistent with her diagnosis of hepatitis C. However, the ALJ further noted that Plaintiff only received intermittent care for this condition and the record did not include evidence of significant complications. (Tr. 15) Plaintiff also complained of being depressed, but indicated that she only had a mild mental impairment. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

The ALJ also reasonably found that Plaintiff's daily activities were inconsistent with her claims of disabling pain and fatigue. An ALJ may properly infer from Plaintiff's daily activities that she is not as limited as she claims. *Bray v. Commissioner of Social Security*

*Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (Plaintiff's active lifestyle, which included cleaning, cooking, walking her dogs, and driving to appointments, did not support her allegations of disabling respiratory illness). Here, Plaintiff stated that she prepared meals, washed dishes, cleaned the house, took care of family pets, went grocery shopping, used the computer, and watched television. (Tr. 155-57) Even if Plaintiff did not perform daily activities for a substantial period of time, the ALJ properly considered those activities in finding that Plaintiff's subjective complaints were not credible to the extent alleged. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (stating that "[i]t is true that Rollins's testimony was somewhat equivocal about how regularly she was able to keep up with all of these activities, and the ALJ's interpretation of her testimony may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second guess it.").

The ALJ's credibility determination is supported by substantial evidence in the record. In January 2008, Robert Hirsch, M.D., opined that Plaintiff was capable of performing light work. (Tr. 223-30 ); *see* 20 C.F.R. § 404.1527(f), 416.927(f) (ALJ must consider expert opinions of State agency physicians). A second state agency physician, Ernest Griffith, M.D., confirmed Dr. Hirsch's conclusion in October 2008. (Tr. 352) The record did not include any other medical source opinions regarding Plaintiff's physical capacity for work. The opinions of Drs. Hirsch and Griffin provide substantial evidence in support of the ALJ's finding that Plaintiff retained the residual functional capacity for light work.

**VII. Conclusion**

For the reasons set forth above, the Court finds that Commissioner's decision is supported by substantial evidence and is free from harmful legal error. Accordingly, that decision is affirmed.

Accordingly,

///

///

///

- 12 -

**IT IS ORDERED** that the Commissioner's decision denying Plaintiff's application for disability benefits is **AFFIRMED**. The Clerk is kindly directed to terminate this action.

Dated this 27th day of January, 2012.

*Lawrence O. Anderson*
Lawrence O. Anderson
United States Magistrate Judge